UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————
DAVELLE WILLIAMS,
                       Plaintiff,

           -v-

THE CITY OF NEW YORK, *et al.*,
                       Defendants.

20-CV-8622 (JPO)

OPINION AND ORDER

———————————————————————

J. PAUL OETKEN, District Judge:

      In this employment discrimination case, Plaintiff Davelle Williams, a corrections officer, sues the City of New York and the City of New York Department of Corrections under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12201, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, §§ 8-101, *et seq.* Defendants have filed a motion to dismiss the amended complaint for failure to state a claim. Defendants' motion to dismiss is granted in part and denied in part.

**I.    Background**

      The following background comes from the allegations in the amended complaint, which "are assumed to be true." *See Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021).

    **A.    Factual Background**

      Plaintiff Davelle Williams has worked as a corrections officer for the New York City Department of Correction since May 2013. (*See* Dkt. No. 5 ("FAC") ¶ 14.) In September 2017, Plaintiff was promoted to Corrections Captain. (*See id.*) In January 2020, Plaintiff was awarded

a Security Captain Post by Acting Warden Sharlisa Walker. (*See* FAC ¶ 15.) Shortly thereafter, Warden Walker was transferred, and Warden Sherma Dunbar took her place. (*See id.*)

The amended complaint alleges that "Warden Dunbar was known for favoring male captains over female captains, and had received complaints from other female officers about the disparate treatment." (*Id.*) When Plaintiff asked about her award, Warden Dunbar stated, "I will not be giving you no award letter," so Plaintiff would not have the Security Captain Post. (*Id.*) Warden Dunbar eventually re-posted the Security Captain Post. (*See* FAC ¶ 23.)

The amended complaint alleges that on February 7, 2020, "Plaintiff became temporarily disabled . . . after a use of force incident that took place while she was on duty." (FAC ¶ 16.) The use of force incident resulted in an "on-the-job injury and . . . temporary disabilities," meaning that "Plaintiff was temporarily unable to type or write." (FAC ¶ 20.) Accordingly, she was placed on "medically monitored" status, which is a form of light duty. (*Id.*) At the time, Warden Dunbar allegedly stated that she had "no respect for anyone who is on Medically Monitored status or who calls out sick either." (*Id.*)

On February 19, 2020, Plaintiff filed an internal Equal Employment Opportunity ("EEO") complaint against Warden Dunbar. (*See* FAC ¶ 17.) A month later, Plaintiff learned from her colleague that Warden Dunbar told him that Plaintiff was filing a complaint. (*See* FAC ¶ 18.) That day, Deputy Warden Tiffany Morales "served Plaintiff with a squad rotation change, which resulted in a less favorable schedule." (*Id.*) Deputy Morales stated that she was "just following orders from Warden Dunbar." (*Id.*) Plaintiff ultimately received a letter stating that "an investigation . . . revealed insufficient evidence to support your allegations." (FAC ¶ 27.)

Plaintiff contracted COVID-19, and she was out sick from March 29, 2020 through April 20, 2020. (*See* FAC ¶ 19.) The amended complaint alleges that she returned to "a hostile

environment." (*Id.*) She was still "unable to type or write and remained on" medically monitored status. (*See* FAC ¶ 20.) Soon after, she overheard Warden Dunbar state that "people sitting in control not able to do anything and some captains should get demoted." (*Id.*)

The next day, Warden Dunbar and Deputy Morales held a staff meeting where they complained that "over 3,500 staff members were out sick and for those of you who didn't call out sick, thank you. For those of you that was out sick you will be placed in a category and spinning on the wheel and if you call out sick it's on you." (FAC ¶ 21.)

The next week, Deputy Morales gave Plaintiff "chronic papers . . . as a result of her extended absence due to COVID-19." (FAC ¶ 22.) If sustained, Plaintiff allegedly "would be prohibited from leaving her house except during certain hours if she took any additional sick days." (*Id.*) Plaintiff appealed her chronic status, but "her appeal was held up and not submitted to the appropriate office." (*Id.*)

In June 2020, Warden Dunbar allegedly distributed appreciation awards to employees who did not go out sick due to COVID-19 in front of the whole staff. (*See* FAC ¶ 24.) The amended complaint alleges that this distribution "effectively punish[ed]" Plaintiff "and other employees who had the misfortune of contracting COVID-19." (*Id.*)

Plaintiff requested and was granted a transfer to another facility. (*See* FAC ¶ 25.) The amended complaint alleges that "her transfer came with a schedule change that is extremely inconvenient and interferes with Plaintiff's ability to provide care for her family." (*Id.*)

B.  **Procedural History**

Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*See* FAC ¶ 5.) Plaintiff received a right to sue letter. (*See* FAC ¶ 6.) Plaintiff then filed suit in this Court. (*See* Dkt. No. 1.)

The amended complaint asserts that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by discriminating against her on the basis of her race and gender. (*See* FAC ¶¶ 29-33.) The amended complaint further asserts that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12201, because they discriminated against her on the basis of her disability. It also asserts that Defendants violated the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, §§ 8-101, *et seq.*, because they discriminated against her on the basis of her race, sex, and disability.

Finally, the amended complaint asserts that Defendants violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* Plaintiff alleges that after she contracted the coronavirus, she "exercised her right to the two weeks of paid leave provided by" the Families First Coronavirus Response Act of 2020 ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020), and her "regular entitlement to FMLA leave for the remaining time." (FAC ¶ 49.) Plaintiff alleges that Defendants "creat[ed] a hostile work environment by specifically targeting Plaintiff and other employees who had called out sick for reasons related to the coronavirus"; "threaten[ed] Plaintiff with demotion and less desirable assignments as a result of her being out sick with the coronavirus"; and "pass[ed] over Plaintiff . . . for awards specifically created to reward those who did not exercise their FMLA rights." (FAC ¶ 50.)

Defendants moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Dkt. No. 18.)

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a complaint must state "enough facts to state a claim to relief that is

4

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

### III. Discussion

#### A. The New York City Department of Correction

Plaintiff cannot state any claim against the New York City Department of Correction because the DOC is not a suable entity. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17 § 396. This section "has been construed to mean that New York City Departments, as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159-60 (2d Cir. 2008). All claims against DOC therefore must be dismissed with prejudice. *See, e.g.*, *Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 440 (S.D.N.Y. 2010) (dismissing claims against DOC); *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *4 (S.D.N.Y. June 23, 2010) (same).

#### B. Title VII, NYSHRL, and NYCHRL Claims against the City of New York

Plaintiff has not stated a discrimination claim against the City of New York under Title VII, NYSHRL, or NYCHRL. Plaintiff has withdrawn her claim of race discrimination. (*See* Dkt. No. 25 ("Opp'n Memo.") at 5 n.2.) And Plaintiff has not alleged facts giving rise to an inference of sex discrimination.

1.     **Disparate Treatment Claim**

Plaintiff has not stated a disparate treatment claim. Title VII makes it an "unlawful employment practice" for an "employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." To survive a motion to dismiss, a plaintiff must plausibly plead "a *prima facie* case of sex discrimination by demonstrating that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (quoting *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016)). Allegations must at least contain facts that give "plausible support to a minimal inference of discriminatory motivation." *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

The amended complaint asserts that Warden Dunbar discriminated against her when she "revok[ed] her scheduled promotion" (FAC ¶ 30), meaning her refusal to award Plaintiff a Security Captain Post. But the amended complaint does not allege that she was qualified for this post. In addition, it does not raise an inference that the refusal to award her the post was an "adverse employment action," because it does not show that the change in post reflected a "material . . . change in the terms of conditions of employment," like a promotion or change in title, rather than just "an alteration of job responsibilities." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Indeed, the amended complaint does not detail the post at all. (*See* FAC ¶ 15.) In opposition to the motion to dismiss, Plaintiff adds information about the post in a declaration. (*See, e.g.*, Dkt. No. 25-1 ("Williams Decl.") ¶ 18.) But "the complaint cannot be amended by the brief in opposition to a motion to dismiss." *Jones v. Cuomo*, 542 F. Supp. 3d 207, 222 n.4 (S.D.N.Y. 2021). Further, the amended complaint does not contain facts

supporting an inference of discriminatory motivation. Plaintiff alleges only that "Warden Dunbar was known for favoring male captains over female captains, and had received complaints from other female officers about the disparate treatment." (*Id.*) Such vague allegations do not raise an inference that the Warden specifically denied the post because her sex, and in any event, are conclusory. *See Iqbal*, 556 U.S. at 681. In opposition to the motion to dismiss, Plaintiff also adds that the post was eventually awarded to a male employee. (*See* Dkt. No. 25-1 ("Williams Decl.") ¶ 9.) But again, those declarations are not part of the operative complaint. That also goes for Plaintiff's allegation that Warden Dunbar "refused to update [her] 22R from light duty to full duty [so she] . . . remained unable to apply for a promotion to Assistant Deputy Warden." (*Id.* ¶ 18.) It is not in the amended complaint. Accordingly, Plaintiff's Title VII, NYSHRL, and NYCHRL disparate treatment claims relating to sex discrimination must be dismissed.

        **2.**        **Hostile Work Environment**

Plaintiff further asserts that she was subject to a hostile work environment related to her sex. (*See* FAC ¶ 30.) "[A] plaintiff claiming a hostile environment must plausibly allege offensive conduct based on sex that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). At most, the amended complaint alleges that "Warden Dunbar badmouth[ed] her to other staff, including supervisor, due to her . . . gender." (FAC ¶ 26.) But the amended complaint does not identify "a single comment . . . with any apparent connection" to her sex or gender. *Joseph v. United Techs. Corp.*, 693 F. App'x 34, 36 (2d Cir. 2017) (summary order); (*see, e.g.*, FAC ¶¶ 15-16, 18, 21, 24.) Accordingly, Plaintiff's Title VII,

7

NYSHRL, and NYCHRL hostile work environment claims relating to sex discrimination are dismissed as well.[1]

### C. ADA, NYSHRL, and NYCHRL Claims against the City of New York

Plaintiff also has not stated a disability claim against the City under the ADA, the NYSHRL, or the NYCHRL either. Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . employee compensation . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The elements of a claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). A "disability" includes "a physical or mental impairment that substantially limits one or major life activities." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(1)(A)).

Plaintiff alleges that she is disabled, not perceived to be so. (*See* FAC ¶¶ 16, 20.) Defendants move to dismiss Plaintiff's ADA claim in part on the grounds that Plaintiff makes only conclusory allegations that she is disabled. (*See* Dtk. No. 18-1 ("Defs.' Memo") at 8.) A plaintiff raises an inference that she is actually disabled only if she raises an inference that she has a "physical or mental impairment." 42 U.S.C. § 12102; *see Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). Among other things, a "[p]hysical or mental impairment" means "[a]ny

---

[1] The amended complaint also asserts that the City violated Title VII, NYSHRL, and NYCHRL's prohibition against sex discrimination when it "retaliat[ed] against her after she filed an internal EEO complaint." (FAC ¶ 30.) That claim is discussed below.

physiological disorder or condition . . . or anatomical loss affecting one or more body systems." 28 C.F.R. § 35.108.  Plaintiff first alleges that she had an "on-the-job injury" relating to "a use of force incident that took place while she was on duty" (FAC ¶¶ 16, 20), and as a result, that she "became temporarily disabled and was placed on 'medically monitored' status" (FAC ¶ 16), where she was "temporarily unable to type or write" (FAC ¶ 20).  The allegation that Plaintiff suffered an "on-the-job injury," without further detail, does not raise an inference that she has a physical or mental impairment.  *See Iqbal*, 556 U.S. at 681.  Again, Plaintiff adds more information in opposition to the motion to dismiss, but the complaint does not state a claim.

Plaintiff also suggests that she is disabled because she contracted COVID-19.  But "Plaintiff has not alleged any facts regarding [her] symptoms or impairments as a result of [her] COVID-19 diagnosis, and has not alleged what 'major life activity' or activities [she] was unable to perform as a result."  *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 679 (E.D. Pa. 2021).  Accordingly, Plaintiff's ADA, NYSHRL, and NYCHRL disability claims are dismissed.

### D.  Retaliation Claims against the City of New York

Finally, Plaintiff has stated retaliation claims under Title VII, the NYSHRL, the NYCHRL, and the FMLA — but not the ADA — based on allegations that Defendants issued Plaintiff chronic papers.  To state a claim under these statutes, a plaintiff must plausibly allege that "(1) [Plaintiff] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013); *see Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (FMLA).

Plaintiff has not identified any protected activity under the ADA.  The amended complaint identifies two protected activities: (i) filing an internal EEO complaint (*see* FAC ¶ 17),

9

and (ii) exercising her right to "two weeks of paid leave" as well as some "FMLA leave" after she contracted the coronavirus (*see* FAC ¶ 49).  The internal EEO complaint, which is referenced in the amended complaint, alleges only race and sex discrimination.  (*See* Dkt. No. 18-4 ("EEO Complaint").)  Because Plaintiff has not identified protected activity under the ADA, her ADA retaliation claims must be dismissed.

Plaintiff, however, has stated a retaliation claim under Title VII, the NYSHRL, and the NYCHRL.  The internal EEO complaint, which alleges race and sex discrimination, reflects protected activity under those statutes.  Plaintiff alleges that Warden Dunbar "inform[ed] many of her coworkers that Plaintiff had filed an internal EEO complaint," indicating that Plaintiff's employer was aware of the complaint.  (*See* FAC ¶ 18.)  And Plaintiff has identified at least one materially adverse action with an adequately alleged causal connection to the filing: being issued chronic papers by Deputy Warden Morales.  (*See* FAC ¶ 22.)  The amended complaint alleges that the papers mean that "Plaintiff would be prohibited from leaving her house except during certain hours if she took any additional sick days" (*id.*), which is enough to "well dissuade a reasonable worker from making or supporting a charge of discrimination" again, *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).  Defendants argue that such action is too distant from the filing of the complaint to establish a causal connection, but the complaint was filed on February 19, 2020, and the papers were issue on May 11, 2020, which is close enough in time on these facts to establish a causal relationship.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[F]ive months is not too long to find the causal relationship.").  Because Plaintiff has stated a retaliation claim under Title VII, it has also stated a claim under NYSHRL and the even more permissive NYCHRL.

For similar reasons, Plaintiff has stated a retaliation claim under the FMLA. Plaintiff exercised her right under the FMLA's Families First Coronavirus Response Act of 2020 ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020), to take two weeks of paid leave starting March 29, 2020. (*See* FAC ¶ 49.) She ended her leave on April 20, 2020. (*See* FAC ¶ 19.) The facts alleged raise an inference that Defendants were aware of that activity. And plaintiff has identified a materially adverse action with an adequately alleged causal connection to the paid leave: being issued "chronic papers by Deputy Warden Morales as a result of her extended absence due to COVID-19" on May 11, 2020. (FAC ¶ 22.) Defendants rely on a DOC policy document to argue that "chronic papers are a standard issuance for any employee out sick more than twelve days in a twelve-month period." (Defs.' Memo at 17; Dkt. No. 18-3.) But that policy, which is not referenced in the complaint, is not fairly considered on a motion to dismiss. Accordingly, it remains an adverse action with a sufficient causal connection, and Plaintiff therefore states a claim.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Plaintiff requests leave to amend to correct any deficiencies. (Dkt. No. 25 at 22.) That request is granted, provided that any amended complaint shall be filed within 30 days after the date of this opinion and order. If Plaintiff chooses not to amend the complaint, the City of New York shall file an answer to the surviving claims within 21 days after receiving notice of Plaintiff's decision not to file an amended complaint.

The Clerk of Court is directed to terminate the New York Department of Correction as a defendant in this action.

The Clerk of Court is directed to close the motion at Docket Number 18.

SO ORDERED.

Dated: March 31, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge