UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X   Civil Docket No.: 20-cv-8622
DAVELLE WILLIAMS,

                    Plaintiff,   **SECOND AMENDED COMPLAINT**

   -against-

THE CITY OF NEW YORK and
any related individuals and/or entities,   *Jury Trial Demanded*

                    Defendant.
------------------------------------------------------------X

Plaintiff Davelle Williams ("Plaintiff"), by and through her counsel, Bell Law Group PLLC, as and for her Complaint in this action against Defendant, The City of New York, hereby alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff brings this action to recover for (1) unlawful discrimination on the basis of gender in violation of the Civil Rights Act of 1964; (2) unlawful discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12201, *et seq.*; (3) unlawful discrimination on the basis of disability in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*; (4) unlawful discrimination in violation of the New York City Human Rights Law ("NYCHRL"); and (5) retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq.*

## PARTIES

2. Plaintiff Davelle Williams is a resident of the State of New York, Queens County.

3. At all relevant times, Defendant, The City of New York is a municipality, duly organized and existing under and by virtue of the laws of the State of New York.

1

4. At all relevant times, Plaintiff is an "employee" of Defendant within the meaning of all applicable statutes.

5. At all relevant times, Defendant is an "employer" within the meaning of all applicable statutes.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because the action involves federal questions regarding the deprivation of Plaintiff's rights under the Civil Rights Act of 1964, the ADA and the FMLA. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's related claims under the NYSHRL.

7. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because it is a judicial district in which Defendant is situated and a substantial part of the events or omissions giving rise to this action occurred in this district.

## PROCEDURAL REQUIREMENTS

8. Plaintiff duly exhausted her administrative exhaustion requirements by timely filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

9. Plaintiff received a right to sue letter from the EEOC on July 31, 2020.

10. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

11. Plaintiff has worked for Defendant in the New York City Department of Corrections from in or around May 2013 through present.

12. Plaintiff worked as a corrections officer from in or around May 2013 through September 2017, as a corrections captain during the relevant period of Plaintiff's employment from

in or around October 2017 through December 2021, and as a security aide to the Commissioner since January 2022.

13. During the relevant period of Plaintiff's employment, Plaintiff worked at the George R. Vierno Center.

14. As a correction captain, Plaintiff's duties included working in the jail behind the gates covering the building, conducting searched for contraband, performing security tours, processing transfer of prisoners in and out of the jail and responding to incidents of disorderly inmates.

15. In or around February 2019, Plaintiff suffered severe workplace injuries to Plaintiff's right hand and right wrist due to an assault by an inmate. Plaintiff required various medical treatment as a result of these injuries. This included receiving treatment at Mt. Sinai Hospital, having MRI's taken of Plaintiff's right hand and right wrist, and receiving physical therapy for multiple months.

16. In January 2020, Plaintiff was awarded the Security Captain Post by Acting Warden Sharlisa Walker. Shortly thereafter, Warden Walker was transferred to another facility, and Claimant was placed under the command of Warden Sherma Dunbar as of January 7, 2020. When Claimant inquired about the award letter that had been promised to her by Warden Walker, Warden Dunbar refused, saying "I will not be giving you no award letter." Warden Dunbar was known for favoring male captains over female captains and had received complaints from other female officers about the disparate treatment.

17. On February 5, 2020, Plaintiff passed a test for promotion to Assistant Deputy Warden. However, to receive the promotion a 22R report had to be approved by Warden Dunbar.

18. On February 7, 2020, Plaintiff reinjured Plaintiff's right hand and right wrist at work. As a result of these injuries Plaintiff suffered from extreme pain, difficulty and limitations when writing, lifting weight in excess of a few pounds, driving, opening drawers and holding objects. Plaintiff was immediately placed on "medically monitored" status, a form of light duty. Plaintiff received medical treatment for approximately six months from the date of Plaintiff's injuries and was recommended for surgery on her right hand and right wrist.

19. Once on light duty Plaintiff was removed by Warden Dunbar from the Security Captain Post and was thereafter assigned to the back of the control room to perform lesser duties of responding to phone calls and to stand at the front gates. The Security Captain Post Plaintiff was awarded was then assigned to Captain George Gustav, a male employee. Furthermore, Warden Dunbar changed Plaintiff's 22R status to light duty to which Plaintiff was no longer eligible for the promotion to Assistant Deputy Warden.

20. On or about February 10, 2020, Warden Dunbar stated to Plaintiff that Plaintiff had "no respect for anyone who is on Medically Monitored status or who calls out sick either."

21. Based upon Warden Dunbar's statements regarding Plaintiff's post and her animus towards Plaintiff's disabled condition, Plaintiff filed an internal EEO complaint against Warden Dunbar on February 19, 2020. Thereafter, Plaintiff was targeted for retaliation by WardenDunbar, Deputy Warden Jonelle Shivraj, and Deputy Warden Tiffany Morales.

22. On or about March 17, 2020, Plaintiff's colleague, Captain Mitchell, told Plaintiff that Warden Dunbar told him Plaintiff was filing an EEO complaint. The same day, Deputy Warden Morales served Plaintiff with a squad rotation change, which resulted in a less favorable schedule. When Plaintiff asked Morales why her days were being changed, Morales stated that she was "just following orders from Warden Dunbar."

23. On March 29, 2020, Plaintiff tested positive for COVID-19 and due to the severity of Plaintiff's symptoms, she was unable to return to work until April 20, 2020. As a result of the COVID-19 infection, Plaintiff suffered severe symptoms including extreme difficulty breathing, fatigue, weakness, and a significant loss of appetite and smell.

24. While on COVID-19 leave, Captain Bernard Mathis, a male employee, was transferred to the jail from an outside location and was assigned to the Security Captain Post Plaintiff had previously been awarded to replace Captain George Gustav. Moreover, when Plaintiff returned, she found herself working in a hostile environment due to her ongoing disabilities and due to Warden Dunbar informing many of her coworkers that Plaintiff had filed an internal EEO complaint.

25. Due to her on-the-job injury and resulting temporary disabilities, Plaintiff was temporarily unable to type or write and remained on medically monitored status. On or about May 4, 2020, Plaintiff overheard Dunbar say to Deputy Warden Tia Cox, loudly enough for Plaintiff to hear, that "people sitting in control not able to do anything and some captains should get demoted." This statement was in regard to Plaintiff working in the back of the control room and Warden Dunbar's discriminatory and retaliatory belief that Plaintiff should be demoted.

26. The following day on May 5, 2020, Warden Dunbar and Deputy Warden Morales held a staff meeting at which they complained that "over 3,500 staff members were out sick and for those of you who didn't call out sick, thank you. For those of you that was out sick you will be placed in a category and spinning on the wheel and if you call out sick it's on you."

27. On May 11, 2020, Plaintiff was issued chronic papers by Deputy Warden Morales as a result of her extended absence due to COVID-19. Plaintiff was immediately forced to appeal as this could result in termination, discipline, loss of benefits and in being prohibited from leaving

5

Plaintiff's home except during certain hours if Plaintiff took any additional medical leave. Due to not being submitted to the appropriate office, Plaintiff's appeal was delayed in processing until May 26, 2020. At all relevant times, this chronic leave policy was discriminatory on its face as it penalized employees for use of medical leave without regard to the disabling condition of the employee.

28. On May 21, 2020, Warden Dunbar re-posted the Security Captain post that had technically been awarded to Plaintiff by Warden Walker, but which Warden Dunbar had refused to sign off on after taking over Warden Walker's post.

29. On June 3, 2020, Warden Dunbar distributed appreciation awards to employees who did not go out sick due to COVID-19 in front of the whole staff, effectively punishing Claimant and other employees who had the misfortune of contracting COVID-19.

30. In June 2020 Plaintiff returned to full duty status. However, Warden Dunbar refused to place Plaintiff in the Security Captain Post. Rather, Plaintiff was placed as a floater in which Plaintiff was required to be assigned to any random posts that were available that day. A position as a floater was a position that was less prestigious with less opportunity for professional growth than working at the Security Captain Post. Furthermore, Warden Dunbar refused to update Plaintiff's 22R from light duty to full duty and Plaintiff therefore remained unable to apply for a promotion to Assistant Deputy Warden.

31. Due to the hostile work environment and ongoing harassment from Warden Dunbar, Plaintiff requested and was granted a transfer to the RMSC. However, the transfer was classified as a "Change of Assignment" rather than an "Administration Transfer". This resulted in Plaintiff receiving a work schedule that not only varied by days but also the start and end time of

work shifts which prevented Plaintiff from continuing with college studies due to the erratic nature of Plaintiff's schedule.

32. Plaintiff previously made the list for promotion to Assistant Deputy Warden, but her chances of promotion were negatively affected by Warden Dunbar speaking poorly of Plaintiff to other staff, including supervisors, due to Plaintiff's race, gender, disability, sick leave due to COVID-19, and EEO complaint.

33. Throughout the month of June, Plaintiff contacted multiple higher-level employees responsible for internal EEO complaints and was given the runaround for weeks. On June 29, 2020, Plaintiff received a self-serving, conclusory letter from Assistant Commissioner and EEO Officer Kammae Owens stating, without explanation, that "an investigation into these allegations revealed insufficient evidence to support your allegations. Accordingly, the allegations are unsubstantiated." The letter failed to advise Plaintiff of her right to pursue external remedies with the EEOC or in any other forum, and misleadingly suggested that she had no available remedies by stating that "the case shall be deemed closed."

34. Defendants' conduct violated the Civil Rights Act of 1964, the Americans with Disabilities Act, the New York State Human Rights Law, the New York City Human Rights Law, and the Family Medical Leave Act as amended by the Families First Coronavirus Relief Act of 2020.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of the Civil Rights Act of 1964)**

35. Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

36. Defendants have discriminated against Plaintiff on the basis of her race and gender by denying her equal terms and conditions of employment, including, but not limited to, revoking

her scheduled promotion and subjecting her to a hostile work environment, and by retaliating against her after she filed an internal EEO complaint.

37. Plaintiff exhausted her administrative remedies by timely filing with the EEOC, which issued a Right to Sue notice on July 31, 2020.

38. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Civil Rights Act of 1964, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

39. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Civil Rights Act of 1964, Plaintiff has suffered and continues to suffer monetary and/or economic harm, as well as mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
**(Discrimination in Violation of the Americans with Disabilities Act)**

40. Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

41. Defendants have discriminated against Plaintiff on the basis of her disability in violation of the Americans with Disabilities Act by denying her equal terms and conditions of employment, including, but not limited to, unlawfully revoking her planned promotion and creating a hostile work environment on the basis of disability, and by retaliating against her after she filed an internal EEO complaint.

42. Plaintiff exhausted her administrative remedies by timely filing with the EEOC, which issued a Right to Sue notice on July 31, 2020.

43. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Americans with Disabilities Act, Plaintiff has suffered and continues to suffer

monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

44. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Americans with Disabilities Act, Plaintiff has suffered and continues to suffer monetary and/or economic harm, as well as mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
**(Discrimination in Violation of New York State Human Rights Law)**

45. Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

46. Defendants have discriminated against Plaintiff on the basis of her race, gender, disability, and prior EEO activity in violation of the New York State Human Rights Law by denying her equal terms and conditions of employment, including, but not limited to, revoking her planned promotion and creating a hostile work environment.

47. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

48. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, as well as mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of New York City Human Rights Law)

49. Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

50. Defendants have discriminated against Plaintiff on the basis of her race, gender, disability, and prior EEO activity in violation of the New York State Human Rights Law by denying her equal terms and conditions of employment, including, but not limited to, revoking her planned promotion and creating a hostile work environment.

51. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

52. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, as well as mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### (Retaliation for Exercising FMLA Rights)

53. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

54. During the full statutory period, Plaintiff was protected by the provisions of the FMLA, 29 U.S.C. 2601, et seq., as amended by the Families First Coronavirus Response Act of 2020, and all applicable regulations thereunder.

55. Plaintiff contracted the coronavirus and was quarantined from March 29, 2020 through April 20, 2020. She exercised her right to the two weeks of paid leave provided by the FFCRA, as well as her regular entitlement to FMLA leave for the remaining time.

56. Defendants retaliated against Plaintiff for exercising her FMLA rights by 1) creating a hostile work environment by specifically targeting Plaintiff and other employees who had called out sick for reasons related to the coronavirus; 2) threatening Plaintiff with demotion and less desirable assignments as a result of her being out sick with the coronavirus; and 3) passing over Plaintiff and other employees who exercised their rights under the FMLA for awards specifically created to reward those who did not exercise their FMLA rights.

57. As a direct and proximate result of Defendants' unlawful retaliation in violation of the FMLA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, as well as mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare that the practices complained of herein are unlawful under applicable federal and state law;

B. Enjoin Defendant from engaging in further acts of illegal retaliation; and

C. Award Plaintiff all remedies available to her under federal and state law, including but not limited to the promotion for which she was passed over, compensatory damages, pre- and post-judgment interest, attorneys' fees and costs, injunctive and declaratory relief, and such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: Syosset, New York
May 2, 2022

>Respectfully submitted,
BELL LAW GROUP, PLLC

>By: */s/ Matthew Madzelan*_____
Matthew Madzelan, Esq.
116 Jackson Avenue
Syosset, New York 11791
(516) 280-3008
Matthew.M@Belllg.com
*Attorneys for Plaintiff*